FILED
CLERK, U.S. DISTRICT COURT
Sept 9, 2026
CENTRAL DISTRICT OF CALIFORNIA
BY: pd DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

March 2026 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JAMES BRASS,<br>aka "Lord,"<br>COURTNEY PRICE,<br>JATEISHA HERRON,<br><br>Defendants. | No. 2:26-cr-00580 - MWC<br><br>I N D I C T M E N T<br><br>[18 U.S.C. § 1028(f): Conspiracy to Commit Identity Fraud in Furtherance of a State Felony; 18 U.S.C. § 1028(a)(7): Identity Fraud in Furtherance of a State Felony; 18 U.S.C. §§ 982(a)(2)(B) and 1028(b): Criminal Forfeiture] |

The Grand Jury charges:

INTRODUCTORY ALLEGATIONS

At times relevant to this Indictment:

A. The California Initiative Process

1. Through a process commonly known as "direct democracy," the Constitution of the State of California provided a means for citizens to bypass the state legislature and enact statutes and constitutional amendments directly through the initiative process.

2. To qualify an initiative for inclusion on a ballot, an initiative's proponent was required to collect and submit a large

number of signatures belonging to registered voters who supported the measure. The number of signatures required was based on the number of voters who participated in the state's most recent gubernatorial election. In 2026, a proponent was required to submit 546,651 signatures to place a proposed statute on the ballot, and 874,641 signatures to place a proposed constitutional amendment on the ballot. An initiative's proponent had up to 180 days to gather these signatures and was required to submit them no later than 130 days before the date of the election.

3. Given the large number of signatures required in such a short period of time, proponents of initiatives typically hired petition management companies to gather the signatures. These companies charged significant fees, with the amount charged for any specific initiative depending on the number of required signatures, the perceived popularity or controversiality of the initiative's subject matter, the amount of time remaining before the election deadline, and the number of other petitions in the field. Petition management companies then set a price for each signature gathered.

4. Petition management companies contracted with multiple "petition coordinators" who, in turn, had relationships with individual "petition circulators," individuals who personally gathered signatures from registered voters, as well as relationships with "sub-coordinators," who managed their own smaller teams of circulators.

5. The price-per-signature set by the petition management companies was comprised of a "field price" paid to the circulators and an "override" that was split among the coordinators.

B. Petition Company 1's Signature Verification Process

6. Petition Company 1 was a petition management company that maintained a database of registered California voters containing voter information provided by the California Secretary of State (the "Voter Database"). The Voter Database included every California voter's name and address and indicated whether the voter had previously signed a specific initiative petition.

7. When Petition Company 1's coordinators submitted petitions to Petition Company 1, the coordinators would access the Voter Database and mark which voters had signed which petitions. This enabled Petition Company 1 to confirm that each signature on a given petition was unique and not repeated.

8. Petition Company 1 and the coordinators who worked with it also used the Voter Database to verify: (1) voter information, (2) that each signer was a registered voter; and (3) that the information written on each petition matched the information in the California Secretary of State's voter rolls.

C. California Elections Code Provisions regarding Petition Circulators

9. Section 104 of the California Elections Code required petition circulators to: (1) personally witness each signer affix his or her signature to a ballot petition and (2) declare, under penalty of perjury, that all signatures were "the genuine signature of the person whose name it purports to be."

10. Section 18613 of the California Elections Code made it a felony to "subscribe[] to any initiative . . . the name of another, or [to] cause[] another to subscribe such a name to that petition."

D. Defendants

11. Defendant JAMES BRASS was both a petition coordinator and petition circulator. He managed a team of petition circulators and also collected signatures himself. Defendant BRASS controlled a company named "Pinnacle Brass LLC," which was registered with the California Secretary of State. Defendant BRASS also controlled a J.P. Morgan Chase Bank account registered to Pinnacle Brass LLC, which had an account number ending in x0769 (the "BRASS Bank Account").

12. Defendants COURTNEY PRICE and JATEISHA HERRON were petition circulators who worked for defendant BRASS.

COUNT ONE

[18 U.S.C. § 1028(f)]

[ALL DEFENDANTS]

13. The Grand Jury realleges paragraphs 1 through 12 of this Indictment here.

A. OBJECT OF THE CONSPIRACY

14. Beginning no later than February 2026, and continuing through at least August 2026, in Los Angeles County, within the Central District of California, and elsewhere, defendants BRASS, PRICE, and HERRON conspired with one another, and with others known and unknown to the Grand Jury, to knowingly and without lawful authority transfer, possess, and use a means of identification of another person, as defined in Title 18, United States Code, Section 1028(d)(7), with the intent to commit, to aid and abet the commission of, and in connection with the commission of, unlawful activity constituting a felony under state law, namely, Signing of Fictitious or Forged name to a Petition, in violation of California Elections Code Section 18613, all in violation of Title 18, United States Code, Section 1028(a)(7).

B. MANNER AND MEANS OF THE CONSPIRACY

15. The object of the conspiracy was to be carried out, and was carried out, in substance, as follows:

a. Defendant BRASS would agree with various petition coordinators working with Petition Company 1 to collect signatures on behalf of Petition Company 1.

b. Defendant BRASS and petition circulators who worked with him, including defendants PRICE and HERRON, would travel to locations within the Central District of California to solicit

signatures, including low-income neighborhoods such as the Skid Row neighborhood in Los Angeles.

c. Defendants BRASS, PRICE, and HERRON would use the Voter Database to identify means of identification, including the names, of registered California voters.

d. Defendants BRASS, PRICE, and HERRON would give petition signers these means of identification, including the names of registered voters, and would instruct the petition signers, in exchange for payment, to copy registered voters' personal information onto ballot initiative petitions and fraudulently sign the petitions in those registered voters' names.

e. After the petition signers signed the petitions using the names of registered voters that defendants BRASS, PRICE and HERRON had given them, defendants BRASS and HERRON would sign declarations at the bottom of the petitions, falsely declaring under penalty of perjury that they personally witnessed the named registered voters sign the petitions and that each signature was, to the best of their knowledge, "the genuine signature of the person whose name it purports to be."

f. Defendants BRASS and HERRON would then turn those petitions, including the declarations falsely representing that each signature on the petitions was "the genuine signatures of the person whose name it purports to be," in to petition coordinators.

g. As defendants BRASS and HERRON knew, their false representations regarding the authenticity of the signatures would result in false and fraudulent signatures being counted in connection with the effort to place the initiative at issue on the ballot.

h. As defendant BRASS also knew, the false representations regarding the authenticity of the signatures would result in payments to him from the petition coordinators and subsequent reimbursements for those payments to the petition coordinators by Petition Company 1. In total, through the operation of the conspiracy, defendant BRASS received approximately $41,600 from petition coordinators working with Petition Company 1.

C. OVERT ACTS

16. On or about the following dates, in furtherance of the conspiracy and to accomplish its object, defendants BRASS, PRICE, and HERRON, together with others known and unknown to the Grand Jury, committed the following overt acts, among others, within the Central District of California:

Overt Act No. 1: On February 20, 2026, defendant BRASS sent defendant HERRON a text message asking for blank ballot initiative petitions.

Overt Act No. 2: On February 27, 2026, defendants BRASS and PRICE set up a table in the Skid Row neighborhood of Los Angeles to collect signatures on ballot initiative petitions.

Overt Act No. 3: On February 27, 2026, defendants BRASS and PRICE accessed the Voter Database and searched for the names and addresses of registered voters.

Overt Act No. 4: On February 27, 2026, defendants BRASS and PRICE provided the names and addresses of registered voters to third party petition signers, including by writing them on scraps of paper.

Overt Act No. 5: On February 27, 2026, defendants BRASS and PRICE paid third parties petition signers cash in exchange for those

signers copying registered voter information from the Voter Database onto ballot initiative petitions.

Overt Act No. 6: On February 27, 2026, defendant BRASS instructed defendant HERRON to turn in petitions in Ontario, California.

Overt Act No. 7: On March 6, 2026, defendant BRASS caused Petition Coordinator 1 to deposit $8,460 into the BRASS Bank Account to pay for signatures defendant BRASS and his co-conspirators collected.

Overt Act No. 8: On March 6, 2026, defendant BRASS caused Petition Coordinator 2 to deposit $7,583 into the BRASS Bank Account to pay for signatures defendant BRASS and his co-conspirators collected.

Overt Act No. 9: On March 5, 2026, defendant BRASS instructed defendant HERRON to tell petition coordinators she collected signatures in different spots between Inglewood and Torrance and to "NEVER EVER SAY DOWN TOWN [sic] LA."

Overt Act No. 10: On March 8, 2026, defendant BRASS instructed defendant HERRON to sign declarations on ballot initiative petitions he collected, even though defendant HERRON did not personally witness the signers affix their signatures.

Overt Act No. 11: On March 11, 2026, defendant BRASS caused Petition Coordinator 3 to transfer $7,500 into the BRASS Bank Account to pay for signatures defendant BRASS and his co-conspirators collected.

Overt Act No. 12: On March 23, 2026, defendant BRASS caused Petition Coordinator 2 to transfer $1,086 into the BRASS Bank Account

to pay for signatures defendant BRASS and his co-conspirators collected.

Overt Act No. 13: On March 27, 2026, defendant BRASS instructed defendant HERRON to calculate the number of signatures he collected and turn them in to a petition coordinator in Lawndale, California.

Overt Act No. 14: On March 27, 2026, defendant HERRON completed a coversheet listing the number of petition signatures defendant BRASS collected, and calculated that they were worth $8,164.

COUNT TWO

[18 U.S.C. §§ 1028(a)(7), 2(a)]

[DEFENDANTS BRASS and PRICE]

17. The Grand Jury hereby realleges paragraphs 1 through 12 of this Indictment here.

18. On or about February 27, 2026, in Los Angeles County, within the Central District of California, and elsewhere, defendants BRASS and PRICE, each aiding and abetting the other, in transactions affecting interstate commerce, knowingly transferred, possessed, and used, without lawful authority, a means of identification of another person, namely, the name of victim C.H., with the intent to commit, to aid and abet the commission of, and in connection with the commission of, unlawful activity constituting a felony under state law, namely, Signing of Fictitious or Forged name to a Petition, in violation of California Elections Code Section 18613.

FORFEITURE ALLEGATION

[18 U.S.C. §§ 982(a)(2)(B) and 1028(b)]

19. Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Sections 982(a)(2)(B) and 1028(b), in the event of any defendant’s conviction of the offense set forth in any of Counts One and Two of this Indictment.

20. Any defendant so convicted shall forfeit to the United States of America the following:

(a) All right, title and interest in any and all property, real or personal, constituting, or derived from, any proceeds obtained, directly or indirectly, as a result of the offense;

(b) Any personal property used or intended to be used to commit the offense; and

(c) To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraphs (a) and (b).

Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Sections 982(b) and 1028(g), any defendant so convicted shall forfeit substitute property, up to the total value of the property described in the preceding paragraph if, as the result of any act or omission of said defendant, the property described in the preceding paragraph, or any portion thereof: (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished

in value; or (e) has been commingled with other property that cannot be divided without difficulty.

A TRUE BILL

/S/

Foreperson

TODD BLANCHE
Attorney General

BILAL A. ESSAYLI
First Assistant United States Attorney

JENNIFER L. WAIER
Chief Assistant United States Attorney and Chief, Criminal Division

JUAN M. RODRIGUEZ
Assistant United States Attorney
Acting Chief, Public Corruption & Civil Rights Section

MICHAEL G. WHEAT
NANDOR F.R. KISS
Assistant United States Attorneys
Public Corruption & Civil Rights Section